IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) A TO Z MACHINING SERVICE,    )
LLC; and    )
(2) FLATSAFE SHELTERS, LLC,    )
    )
        Plaintiffs,    )
    )
vs.    )    No. CIV-10-422-C
    )
(1) NATIONAL STORM SHELTER,    )
LLC; formerly doing business as    )
(2) TURNER MACHINE CO., INC.; and    )
(3) JEFFREY D. TURNER, an individual,    )
    )
        Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs A to Z Machining Services, LLC ("A to Z"), and Flatsafe Shelters, LLC ("Flatsafe"), brought suit against Defendants National Storm Shelter, LLC ("National"), Turner Machine Co. ("Turner Co."), and Jeffrey Turner ("Turner") claiming Defendants' storm shelters infringed on Plaintiffs' patent and copyrights. Presently, each side moves for summary judgment.

## I. BACKGROUND

Plaintiffs, Oklahoma entities in the business of selling tornado storm shelters, claim that Defendants, Tennessee entities in the same business, intentionally copied Plaintiffs' patented shelter design and used Plaintiffs' marketing material, available on its website, to further its business. (Pls.' Compl., Dkt. No. 1, at 2-3.) Turner is the sole member, director, and servicing agent of these entities. (Id. at 2.) Plaintiffs additionally claim that Defendants participated in unfair competitive practices by adopting a name similar to the National Storm

Shelter Association ("NSSA") in an attempt to deceive and confuse consumers for their benefit.

Plaintiffs manufacture and install patented below-ground storm shelters in garages of residential homes for homeowners to escape dangerous storms. This specific shelter was designed to allow the shelter lid to slide up and over the surrounding ground, despite debris, without causing interruption to homeowners' normal garage use. Plaintiffs own Patent No. 7,428,800 ("'800 Patent") that covers this shelter.[1] Claim 1 of the '800 Patent states the following:

1. An underground shelter of the type having a front wall, a back wall, two opposing side walls, a bottom and a top defining a substantially rectangular box with an opening defined in the top, a flat lid adapted to cover the opening, a roller means for alternately rolling the lid to expose or close the open top, the improvement comprising:
   a. substantially, the entire top of the box defining an opening:
   b. the lid adapted to be substantially flush with the surrounding ground level in a closed position: and
   c. a roller means comprising:
      i. a track affixed to each of the side walls near the open top and parallel thereto,
      ii. at least one upper track roller disposed between the lid and each track, each upper track roller rollingly supporting the lid as it moves relative to the track,
      iii. a support means for supporting a leading edge of the lid as it slides over the surrounding ground level, the support means having:
         (1) at least one rail roller adjacent to the back wall disposed between the lid and the track,
         (2) a lower track roller attached to the lid near the trailing edge, the lower track roller engaging a lower track surface,

---

[1] Plaintiff A to Z's shelter design patent No. 7,428,800 was filed on September 30, 2008. (Pls.' Compl., Dkt. No. 1 Exh. 1.)

(3)  at least one rail affixed to the underside of the lid between the rail roller and the lid, each rail having a sloped section near the leading edge of the lid, whereby when the leading edge moves away from the back wall, the lid is displaced upwardly by operation of the sloped section against the rail roller, providing additional clearance for the lid as it passes over the ground surface.

After conducting a <u>Markman</u> hearing, the Court construed the following terms: (1) "substantially flush" as "coplanar with or offset from by an amount that does not interfere with normal garage use, including parking cars or walking;" (2) "rail roller" as "a roller that rolls on a rail;" (3) "adjacent" as "not distant: nearby with the absence of anything of the same kind in between;" (4) "lower track roller" as "a roller that rolls on a lower surface of a track;" (5) "rail" as "a support member having a sloped section, affixed to the underside of the lid, selectively contacting the rail roller to raise the lid and support the lid in the raised position;" and (6) "affixed" as "attached."

After Plaintiffs filed the present suit, Defendants redesigned their shelter and retrofitted previously manufactured shelters to reflect these changes.  Regarding Defendants' initial design ("pre-suit design"), the parties continue to dispute whether it infringed on Plaintiffs' patent.  However, the parties agree that in light of the Court's construction, Defendants' second design ("workaround design") does not infringe the '800 Patent. (Pls.' Br., Dkt. No. 63, at 1 n.1; Defs.' Br., Dkt. No. 66, at 1.)

In their Motion for Summary Judgment, Defendants seek the following relief:  that the workaround design does not literally infringe Plaintiffs' patent; that the doctrine of equivalents

is inapplicable; that Plaintiffs failed to provide the notice required to recover damages under

35 U.S.C. § 287(a); that Plaintiffs lack standing to assert a violation of Oklahoma Deceptive

Trade Practices Act; and, finally, that Plaintiffs' copyright claim is without merit.  Plaintiffs

also move for summary judgment regarding the required notice under § 287(a).  Additionally,

Plaintiffs seek a ruling that Defendants' pre-suit design infringes the '800 Patent and that

Defendants' conduct justifies an award of attorneys' fees and enhanced damages.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will not

preclude summary judgment; instead there must be a genuine issue of material fact."

Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).  The party seeking summary

judgment bears the initial burden of demonstrating the basis for its motion, and identifying

those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  A fact

is material if it affects the disposition of the substantive claim.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 247 (1986).  A court considering a summary judgment motion must view the

evidence and draw all reasonable inferences therefrom in the light most favorable to the

nonmoving party.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir.

2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . or issue any other appropriate order." Fed. R. Civ. P. 56(e). Because both parties move for judgment regarding notice under § 287(a), this issue will be discussed first. Thereafter, the Court will evaluate each parties' respective motion for judgment on its own merits viewing the evidence in favor of the nonmoving party. See Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998).

### III.  DISCUSSION

#### A.  Notice under 35 U.S.C. § 287

Section 287 provides a limitation on damages that patentees can recover by restricting recovery to cases where the patentee gives notice, either constructive or actual, that the item is patented. 35 U.S.C. § 287. Constructive notice can be made to the public by marking the article, or actual notice can be given to the particular defendants by informing them of the patent and their infringement of it. Dunlap v. Schofield, 152 U.S. 244, 247-48 (1894).

Constructive notice is given if the number of the patent is fixed to the item "together with" the "word 'patent' or the abbreviation 'pat.'" § 287. Pursuant to a 2011 amendment, constructive notice is also given by "fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the

patent . . . ."  Id.  If no constructive notice is given, then the statute allows for actual notice, but limits recovery of damages to those incurred after actual notice is given.  Id.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."  Amsted Indus. Inc., Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1994).  Obtaining a copy of the patent alone is not actual notice; rather, the patentee must give notice of the patent and infringement.  Voda v. Cordis Corp., No. CIV-03-1512-L, 2006 WL 1620238, at *3 (W.D. Okla. June 8, 2006).  The filing of an action for infringement is actual notice. § 287(a).  Before being entitled to recover damages for infringement, the patent holder has the burden of proving that the requisite notice was provided.  Dunlap, 152 U.S. at 247-48.

Despite Plaintiffs' arguments stating otherwise, it is clear from the above statutory language that a website alone would not satisfy the notice requirements under § 287(a), even if Defendants viewed the website.  (Pls.' Br., Dkt. No. 63, at 4 ("Plaintiffs clearly give notice of the '800 Patent on the company's web site . . . .").)  The statute's language is clear:  the website "together with" either the word "patent" or "pat." must be marked on the item. Accordingly, Plaintiffs' affixing their website to the storm shelter, without including the word "patent" or the abbreviation thereof, fails to give notice under this subpart.  Neither Defendants' knowledge of the patent nor visiting the website gave Defendants actual notice. Voda, 2006 WL 1620238, at *3.  Upon actual notice, by the filing of this action, Defendants redesigned their shelter and stopped production of the pre-suit design.

Plaintiffs also argue, however, that it is their pattern and practice to affix a sticker with the patent number, citing for support the deposition testimony of Jerry Wirtz, an owner of Plaintiff entities.  (Pls.' Br., Dkt. No. 63 Ex. 1, at 176-79 (stating that "not long after [they] got the patent" they began placing a sticker with the patent number in the "upper right of the [shelter's] latch"); Defs.' Br., Dkt. No. 53, at 13; <u>Nike, Inc. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("In order to satisfy the constructive notice provision of the marking statute, [the plaintiff] must have shown that substantially all of the . . . [items] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous.").  Defendants counter Plaintiffs' assertion by pointing to photographs of one of Plaintiffs' shelters where no sticker is shown.  (Defs.' Br., Dkt. No. 59, at 12 & n.17 (<u>citing</u> Pls.' Br., Dkt. No. 55 Ex. 2).)  A sticker with the word "patent" or the abbreviation thereof together with the patent number would satisfy § 287(a), and Plaintiffs proffer evidence that shortly after obtaining the patent, they began so marking their shelters, which Defendants dispute.  Accordingly, there remains a material issue of fact as to whether Plaintiffs met the constructive notice requirement, which precludes a summary judgment ruling.

## B.  Infringement under 35 U.S.C. § 271

Section 271(a) defines infringing conduct as "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  35 U.S.C. § 271(a).  A determination of infringement is a two step process:  first, the court must construe the claims at issue; second, it must be determined whether the accused

device contains or performs each limitation of the asserted claims.  WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1346 (Fed. Cir. 1999).  The former, claim construction, is a question of law, and the latter is a question of fact.  Id.; Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302 (Fed. Cir. 2005); TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C., 375 F.3d 1126, 1133 (Fed. Cir. 2004).  Whether infringement is willful is also a question of fact that must be proved by clear and convincing evidence and determined from the totality of circumstances.  Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 822 (Fed. Cir. 1992).

Plaintiffs, as the patent holder, "bear the burden of proving by preponderant evidence that every limitation set forth in the asserted claim is found in the accused product, either literally or by a substantial equivalent."  Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1196 (Fed. Cir. 1994).  "[L]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product."  Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1378 (Fed. Cir. 2004).  "A 'substantial equivalent' may be found in the accused device, under appropriate circumstances, if it performs substantially the same function in substantially the same way to achieve substantially the same result."  Wolverine, 38 F.3d at 1196.

> [I]n applying the doctrine of equivalents, each limitation must be viewed in the context of the entire claim. . . .  "It is . . . well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." . . .  To be a "substantial equivalent," the element substituted in the accused device for the element set forth in the claim

must not be such as would substantially change the way in which the function
of the claimed invention is performed.

Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532-33 (Fed. Cir. 1987).

Defendants move for summary judgment rulings on Plaintiffs' literal infringement
claim regarding the workaround design and the application of the doctrine of equivalents.
Plaintiffs made no response to Defendants' arguments regarding the latter, and after reviewing
the applicable law, the Court agrees that application of this doctrine in the present case may
be unwarranted in light of the prosecution history.[2] Regarding the former, Plaintiffs agree that
in light of the Court's construction of the claims, Defendants' workaround design does not
infringe on Plaintiffs' patent.  (Pls.' Br., Dkt. No. 63 at 1 n.1.) The workaround design lacks
the "rail affixed to the underside of the lid between the rail roller and the lid, each rail having
a sloped section near the leading edge of the lid," which is a feature of the asserted
independent claims 1 and 8.  (See id.; Defs.' Br., Dkt. No. 53 Ex. 1, at 76-79, 107-09.)
Accordingly, Defendants' workaround design does not contain "each and every limitation set
forth in a claim appear in an accused product," and, therefore, does not infringe on Plaintiffs'
patent.  Franks Casing Crew, 389 F.3d at 1378.

---

[2] Here, both independent claims 1 and 8 in the '800 Patent were originally dependent claims
that relied upon a disallowed independent claim and were subsequently amended. Defs.' Br., Dkt.
No. 53 Exs. 8-10. "[P]rosecution history estoppel may bar the patentee from asserting equivalents
if the scope of the claims has been narrowed by amendment during prosecution." Honeywell Int'l,
Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc). Felix v. Am.
Honda Motor Co., Inc., 562 F.3d 1167, 1181-82 (Fed. Cir. 2009). Accordingly, to the extent that
Plaintiffs may attempt to argue that the doctrine of equivalents applies to subject matter previously
surrendered during the patenting process, such arguments would be unavailing. But see Honeywell,
370 F.3d at 1140 (discussing rebuttal of the presumption of surrender). However, Plaintiffs have
not raised this issue in their briefing.

Plaintiffs move for summary judgment that Defendants' pre-suit design literally infringed on Plaintiffs' patent. (Pls.' Br., Dkt. No. 55, at 19-20.) Despite Plaintiffs' proclamations otherwise, Defendants have not conceded that their pre-suit design infringes on Plaintiffs' patent. As support for its argument that the pre-suit design infringes on the '800 Patent, Plaintiffs point to the deposition testimony of Defendant entities president, Turner. Plaintiffs argue that Turner agreed that his shelter included all elements of the '800 Patent, except for one, substantially flush. (See Defs.' Br., Dkt. No. 55 Ex. 5, at 169.) However, in light of the Court's subsequent construction of "substantially flush," Plaintiffs argue, the pre-suit design satisfies this final element.

Defendants counter that there were aspects of the pre-suit design that differed from the patented design which preclude a finding of infringement. (Defs.' Br., Dkt. No. 59, 4-5, Ex. 1; Pls.' Br., Dkt. No. 63, 3-4.) Because infringement is a question of fact and there are disputed facts regarding the differences between the pre-suit design and patented design, summary judgment is inappropriate. Additionally, Defendants argue that this issue is moot in light of Plaintiffs' failure to provide the requisite notice under 35 U.S.C. § 287. (Defs.' Br., Dkt. No. 59, at 18-19.) And, as discussed above, there remain material issues of fact regarding whether Plaintiffs satisfied the notice requirement, a prerequisite to recovery of damages for infringement.[3]

---

[3] Plaintiffs also move for a summary judgment ruling that this is the type of exceptional case that triggers the award of reasonable attorneys' fees and enhanced damages. (Pls.' Br., Dkt. No. 55, at 20-21.) However, in light of the material facts at issue regarding whether Plaintiffs meet the notice requirements and are entitled to any award of damages, determining at this point whether Defendants' actions call for enhanced damages would be premature.

### C.  Oklahoma Deceptive Trade Practices Act

Plaintiffs claim that Defendants are in violation of the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. § 51, et seq., because its name is similar to the National Storm Shelter Association.  (Pls.' Br., Dkt. No. 63, at 8-9.)  Defendants argue that the use of this name was acknowledged by the NSSA and is not in violation of Oklahoma law.  As support for this assertion, Defendants point to an e-mail exchange between Turner and the NSSA regarding the change in Defendants' entity's name from Turner Sourcing Solutions LLC to National Storm Shelters LLC, and the NSSA's acceptance of the same.  (Defs.' Br., Dkt. No. 53 Ex. 12.)

Plaintiffs offer no evidence that Defendants' name has actually caused confusion amongst the public, nor have Plaintiffs proffered any other evidence that Defendants' actions were deceptive or misleading.[4]  78 Okla. Stat. § 53 (stating that it is a deceptive trade practice to "[k]nowingly make[] a false representation as to the source, sponsorship, approval, or certification of goods or services; . . . [k]nowingly make[] a false representation as to affiliation, connection, association with, or certification by another; . . . [k]nowingly make[] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith[.]"); see also Poulos v. Carter, 1948 OK 115, 193 P.2d 591, 954.  Without any evidence to the contrary, the unremarkable similarity between the two

---

[4]  Plaintiffs point to their expert's testimony and an NSSA representative that they are "uneasy" with Defendants' name. (Pls.' Br., Dkt. No. 63 Ex. 5.) This testimony, however, does not overcome Plaintiffs' otherwise deficient basis for this claim.

names seems to simply reflect the similar subject matter they represent.   Accordingly,

Defendants are entitled to a summary judgment ruling regarding this claim.[5]

### D.  Plaintiffs' Copyright Claim

Finally, Defendants seek a summary judgment ruling that Plaintiffs' copyright claim

fails as a matter of law due to their pending copyright application status at the time of filing

of the suit.   Plaintiffs sought and subsequently received copyrights to their engineer's

drawings of the storm shelter.  (Pls.' Br., Dkt. No. 63 Ex. 4.)  Plaintiffs argue that it is enough

to have a pending application to file suit for copyright violation.  Plaintiffs filed suit on April

27, 2010, and received registration for copyright on May 12, 2010.  (Pls.' Br., Dkt. No. 63 Ex.

4; Compl., Dkt. No. 1, at 1.)  However, Plaintiffs did have registered copyright protection

governing their textual work, "Flatsafe Tornado Shelters Safety Standing By," which is not

at issue in this suit.  (Compl., Dkt. No. 1, ¶ 17.)

In <u>Reed Elsevier, Inc. v. Muchnick</u>, ___ U.S. ___, 130 S. Ct. 1237, 1241 (2010), the

Supreme Court concluded that § 411(a)'s requirement imposed a mandatory precondition to

suit of copyright registration.   <u>Id.</u> (finding, however, that this precondition was not

jurisdictional); <u>see</u> <u>TI Training Corp. v. FAAC, Inc.</u>, No. 09-cv-00973-WYD-MEH, 2010 WL

2490535, at *3 (D. Colo. June 15, 2010); <u>DRK Photo v. Houghton Mifflin Harcourt Publ'g</u>

<u>Co.</u>, No. CV-09-8225-PCT-NVW, 2010 WL 1688767, at *1 (D. Ariz. April 26, 2010)

(dismissing copyright infringement claim to the extent it referred to unregistered work since

---

[5]  Because Plaintiffs' claim fails for the above-stated reasons, whether Plaintiffs have standing to assert a violation of this Act is moot.  (<u>See</u> Defs.' Br., Dkt. No. 53, at 23; Pls.' Br., Dkt. No. 63, at 10.)

"[r]egistration is . . . a 'precondition' to suing for infringement of a particular copyright) (citing <u>Reed</u>); <u>Shell v. Am. Family Rights Ass'n</u>, No. 09-CV-00309-MSK-KMT, 2010 WL 1348548, at *15 n.22 (D. Colo. March 31, 2010) ("Although registration is not necessary to hold a valid copyright, only registered works may form the basis of action for infringement.").

Additionally, the plain language of the statute, which states that "no civil action for infringement of the copyright in any United Sates work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title," supports this finding.[6] 17 U.S.C. § 411(a).  A work with a pending application is not a registered work within the meaning of § 411(a).  ("Every remedy outlined in Title 17, including injunctions, is conditioned upon a copyright owner having registered the copyright.").  <u>La Resolana Architects, PA v. Clay Realtors Angel Fire</u>, 416 F.3d 1195, 1204 (10th Cir. 2005), <u>abrogated in part by Reed</u>, __ U.S. at ___, 130 S. Ct. at 1243 & n.2.  And the Tenth Circuit has previously adopted the "Registration approach"—where copyright owners may sue for infringement only after a copyright is actually registered by the Copyright Office—rather than the "Application approach"—where payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application satisfies this precondition.  <u>La Resolana</u>, 416 F.3d at 1204 n.9.

---

[6] Preregistration is not applicable here and applies only to certain commercial works within categories that have a history of infringement prior to commercial release.  <u>See</u> 17 U.S.C. § 408(f); 37 C.F.R. § 202.16(c) (2008).

Plaintiffs have since received registration of their material by the Copyright Office, and argue that the issue is moot because the "effective date of a copyright registration is the day on which an application, deposit, and fee . . . have all been received in the Copyright Office." 17 U.S.C. § 410(d).  As support for their conclusion that current registration moots the current issue, Plaintiffs cite Cosmetic Ideas, Inc. v. IAC/Interactivecorp, 606 F.3d 612, 616 (9th Cir. 2010), cert. denied, ___ U.S. ___, 131 S.Ct. 686 (2010).  (Pls.' Br., Dkt. No. 63, at 7 ("[T]he simpler answer is to observe that the works at issue are all now registered, so the point is moot.").)  In Cosmetic Ideas, the Ninth Circuit explicitly stated that "[o]nce a certificate is issued, the registration dates back to the date of application."  Cosmetic Ideas, 606 F.3d at 616; 17 U.S.C. § 410(d) ("The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.").  However, the Ninth Circuit, unlike the Tenth Circuit, adopted the "Application approach."  See Cosmetic, 606 F.3d at 617 n.7, 619 (disagreeing with the Tenth Circuit's reading of "may" in § 408(a) and finding that the Application approach "better fulfills Congress's purpose of providing broad copyright protection while maintaining a robust federal register").  And the Tenth Circuit has explicitly found that "as to the relation-back effect of registration, the effective date serves other purposes under the Act, such as the term of registration.  It is not logical to assume that the relation-back provision subsumes the explicit requirements of § 411 and § 410(a)."  La Resolana, 416 F.3d at 1204.  Accordingly, Defendants' argument that Plaintiffs' copyright claim fails for lack of satisfying the

precondition of registered copyrights is availing,[7] and Plaintiffs' copyright claim must be dismissed.

## IV.  CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. No. 53) is partially GRANTED, regarding the following issues:  that the workaround design does not infringe on Plaintiffs' patent; that Plaintiffs' website alone is insufficient to give constructive notice; and regarding Plaintiffs' Oklahoma Deceptive Trade Practices Act claim and Copyright claim, which is dismissed without prejudice.  Defendants' Motion is DENIED regarding Defendants' pre-suit design.  Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 55) is DENIED.

IT IS SO ORDERED this 29th day of December, 2011.

ROBIN J. CAUTHRON
United States District Judge

---

[7]  This finding, however, does not preclude Plaintiffs from subsequently refiling any copyright claim once the preconditions to filing have been met.